UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal Case No.08cr716-W |
| ) | |
| Plaintiff, ) | **ORDER GRANTING DEFENDANT'S** |
| ) | **MOTION TO SEAL SECOND** |
| v. ) | **FINANCIAL AFFIDAVIT** |
| ) | |
| JAMES FRANCIS MURPHY (1) ) | |
| ) | |
| Defendant. ) | |
| ) | |

## BACKGROUND

Defendant, Dr. James Francis Murphy ("Dr. Murphy" hereafter), made his initial appearance before this Court on February 26, 2008. At that time he was arraigned on a two count complaint charging one felony and one misdemeanor for conduct arising out of his attempt to use a false diplomatic badge to bypass security at the San Diego Airport. Although Dr. Murphy submitted a CJA Form 23 financial affidavit (the "first" financial affidavit)[1] in support of a request for appointed counsel, he advised the Court that he may want to represent himself, at least on the felony charge.[2] The Court appointed Robert Rexrode, Esq. as provisional counsel and ordered Dr. Murphy to provide a more detailed financial affidavit prior to the preliminary hearing which was scheduled for March 11, 2008.

---

[1] The Criminal Justice Act of 1964 provides that each District Court must adopt a plan for furnishing representation "for any person financially unable to obtain adequate representation." 18 U.S.C. 3006A(a). In this District defendants seeking appointed counsel generally fill out a CJA form 23 financial affidavit which is then placed into the court's file.

[2] Dr. Murphy's statements in open court were to the effect that he does not recognize the the United States Government has having jurisdiction over him.

The Court also set a "*Ferreta*" hearing[3] on Dr. Murphy's motion to represent himself for that same date. On March 10, 2008, Dr. Murphy submitted to the court *ex parte* a more detailed financial affidavit (the "second" financial affidavit) consisting of a CJA 23 with two exhibits attached, along with a motion to seal the second financial affidavit.

On March 11, 2008, the Government attempted to file a two count misdemeanor information; however, it was unclear to the Court, the Assistant U.S. Attorney, and the defense whether one of the charges was a misdemeanor or a felony. The Government tacitly withdrew the information when the Court indicated it would continue the preliminary hearing to March 14, 2008, on its own motion based on extraordinary circumstances[4] so that the Government could sort out the charges and possibly seek an indictment before the grand jury. Also on March 11, 2008, the Court ordered provisional defense counsel to serve the Government with a redacted copy of the motion to seal the second financial affidavit; set the hearing on the motion to seal for March 14, 2008, and continued the *Ferreta* hearing to March 14, 2008. In the meantime, on March 12, 2008, the Government filed a three count misdemeanor information [Doc. No. 10], one count being a Class A misdemeanor and two counts consisting of Class B misdemeanors ("petty offenses") and a response to the motion to seal the second financial affidavit. The Court arraigned Dr. Murphy on the information; vacated the preliminary hearing set for March 14, 2008[5] but kept the *Ferreta* hearing and the hearing on the motion to seal on calendar for March 14, 2008.

On March 14, 2008, Dr. Murphy withdrew his request for self-representation, rendering the *Ferreta* motion moot. The Court then proceeded to hear and determine the motion to seal the second financial affidavit.

/ / /

---

[3] *Ferreta v. California*, 422 U.S. 806, 835-36 (1975).

[4] After Dr. Murphy was arrested in his attempt to bypass security screening at the San Diego International airport, federal authorities found in his bag marked "diplomatic pouch" a minature radiation detector/alarm, and a pen-sized plastic instrument containing an unidentified liquid and white powder. Federal authorities submitted the substance for identification to the FBI crime lab, but the results are not yet available. The court found these circumstances "extraordinary" such that it could on its own motion continue the preliminary hearing for several days to allow the FBI to analzye the substance to assist in its charging decision.

[5] Once the information was filed charging three misdemeanors Dr. Murphy was no longer entitled to a preliminary hearing. FedRCrimP 5.1(a)(4).

**MOTION TO SEAL FINANCIAL AFFIDAVIT**

Dr. Murphy requests that his more detailed financial affidavit be filed under seal so that he is not forced to choose between his fifth amendment right against self-incrimination and his sixth amendment right to counsel. The United States opposes, arguing that the information in the affidavit concerning his banking practices, investments and expenditures does not implicate the fifth amendment. The Court observes first that there is a presumption of openness of criminal proceedings which arises from the First Amendment and the common law. *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 509 (1984) (*Press-Enterprise I*); *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 9-10 (1986)(*Press-Enterprise II*). Consequently, the Court cannot order Dr. Murphy's financial affidavit filed under seal unless it makes a specific finding that his financial disclosure would present a "substantial hazard [ ] of self-incrimination that [ ] is 'real and appreciable' and not merely 'imaginary and unsubstantial.'" *Seattle Times v. United States District Court*, 845 F.2d 1513, 1518 (9th Cir. 1988); *United States v. Kodzis*, 255 F.Supp.2d 1140, 1144 (S.D.Cal. 2003).

Dr. Murphy's first financial affidavit that is public record lists his assets as (1) income from employment as a physician at $10,000 per month; (2) approximately $20,000 cash in a checking or savings account, (3) a home worth approximately 1.5 million dollars on which he owes $400,000), 4) stocks worth $50,000, and two vehicles worth $15,000. He lists his wife and three daughters as dependents. With regard to debts and obligations, he lists a home mortgage of $400,000, and a variety of monthly bills that total $3950, leaving $6050 in monthly positive cash flow. He points out that since the filing of his original financial affidavit the IRS has filed tax liens on his property in the total amount of $907, 111.83. Given the size of the tax lien and the potential for criminal tax violations, Dr. Murphy argues that the public filing of his detailed financial affidavit may expose him to further criminal liability and thus he asks that the second financial affidavit be sealed.[6]

The Court is persuaded that Dr. Murphy has demonstrated a "real and appreciable" hazard that the statements contained in his second financial affidavit could subject him to criminal tax liability. *Seattle Times* 854 F.2d at 1518. The financial information contained in the second affidavit differs

---

[6] Mr. Rexrode stated *in camera* at sidebar his reasons for believing Dr. Murphy's criminal exposure is real and appreciable.

1  considerably with what was listed in the first affidavit, the biggest difference being the large IRS tax
2  liens filed against Dr. Murphy <u>after</u> his first financial affidavit was submitted to the court.  Although the
3  tax liens are already public record and Dr. Murphy is not presently charged with any tax crimes, the size
4  of the tax liens alone suggest he may be facing criminal prosecution in the future, especially when
5  viewed against the income, expenses and assets listed in his second financial affidavit.
6       As such, the Court finds that disclosure of the information could expose Dr. Murphy to real and
7  appreciable fifth amendment concerns and his request to file the financial affidavit under seal is
8  **GRANTED**.
9       Having reviewed the second financial affidavit and the IRS tax liens it appears to the Court that
10 Dr. Murphy is presently eligible for appointed counsel.  Therefore, the Court **REMOVES** the
11 provisional status of Mr. Rexrode's appointment and **ORDERS** the second financial affidavit and Mr.
12 Rexrode's comments at sidebar **FILED UNDER SEAL**.
13      **IT IS SO ORDERED**.
14 DATED:  March 14, 2008

*/s/ Nita L. Stormes*
Hon. Nita L. Stormes
U.S. Magistrate Judge